United States District Court
Southern District of Texas
**ENTERED**
September 28, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DONALD KENNETH MCLEOD,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-CV-00882** |
| | § | |
| **FRANK J. BISIGNANO,**[1] | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Donald Kenneth McLeod filed this action under Section 205(g) of the Social Security Act ("SSA"), 42 U.S.C. § 405(g), appealing the Commissioner of Social Security's ("the Commissioner") decision denying his 2018 applications for Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI. (Dkt. No. 1). After a three-year delay arising from service of process, Plaintiff filed his Initial Brief. (Dkt. No. 14). In opposition to McLeod's Initial Brief, the Commissioner filed a Motion for Summary Judgment, (Dkt. No. 15), asking for this Court to affirm the decision of the administrative law judge ("ALJ"), which held that McLeod was not disabled within the meaning of the SSA as of the date of the April 28, 2021, decision (the "ALJ Decision").

---

[1] Plaintiff originally filed this action against Dr. Kilolo Kijakazi as Acting Commissioner of the Social Security Administration. (Dkt. No. 1). Defendant's Motion for Summary Judgment, (Dkt. No. 15), is filed on behalf of Frank J. Bisignano as he became Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano will be substituted as the Defendant in this suit.

Pending before the Court is Plaintiff's Initial Brief, (Dkt. No. 14), and Defendant's Motion for Summary Judgment, (Dkt. No. 15). For the following reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment, (Dkt. No. 15), and **AFFIRMS** the Commissioner's decision that Plaintiff McLeod was not disabled within the meaning of the SSA as of the date of April 28, 2021, ALJ decision.

## I. BACKGROUND[2]

McLeod was born in 1957 and has a high school education. (Dkt. No. 8-1 at 50, 67, 226). On August 22, 2018, he applied for Disability Insurance Benefits under Title II alleging that he was disabled beginning on January 1, 2017. (*Id.* at 98, 226). On November 15, 2018, he applied for Supplemental Security Income under Title XVI. (*Id.* at 99, 230). The agency denied both his Disability Insurance Benefits and his Supplemental Security Income applications in 2019. (*Id.* at 88–113, 119–37). McLeod requested a hearing before an ALJ. (*Id.* at 138–39).

On July 10, 2020, McLeod and a vocational expert, Dr. Travis Andrews, testified at a telephonic hearing before an ALJ. (Dkt. No. 8-1 at 58–87). The ALJ, the Hon. Gregory M. Hamel, considered the vocational expert's testimony as well as consultative expert testimony from Dr. David McLendon and concluded at step five of his five-step sequential decision[3] analysis that McLeod could adjust to other work that existed in

---

[2] Except where noted, this Section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). The Court has not weighed evidence or made credibility findings. *Id.*

[3] The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the SSA. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); 20 C.F.R. § 404.1520(a)(4)(i—v).

significant numbers in the national economy. (*Id.* at 51). The ALJ also found that McLeod did not have a listed impairment or combination of impairments under 20 C.F.R. §§ 404.1520(d) and 416.920(d), and therefore was not disabled under the SSA from January 1, 2017, through June 30, 2020, his date last insured, or through the April 28, 2021 decision. (*Id.* at 51–52).

On January 4, 2022, the Appeals Council denied review of the ALJ Decision. (*Id.* at 9–14). Although he missed the initial 60-day window to file a civil action, McLeod filed this case on March 17, 2022, (Dkt. No. 1), after the Appeals Council extended the deadline to file, (Dkt. No. 8-1 at 6). McLeod failed to complete service for several years but eventually filed his Initial Brief on June 2, 2025. (Dkt. No. 14). On June 27, 2025, the Commissioner, as Defendant, filed this Motion for Summary Judgment, (Dkt. No. 15), asking this Court to grant the motion and affirm the ALJ's April 28, 2021, decision. To date, over one year later, McLeod has failed to file a response to Defendant's Motion for Summary Judgment, (Dkt. No. 15).

## II. LEGAL STANDARD

### A. SUMMARY JUDGMENT

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a

verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)), *as revised* (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is

appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When, as here, the nonmovant fails to respond to the motion for summary judgment, the movant is not entitled to summary judgment solely because the nonmovant does not respond. *Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988). Still, "[t]he failure to respond to a summary judgment motion leaves the movant's facts undisputed." *Flowers v. Deutsche Bank Nat'l Tr. Co.*, 614 F.App'x 214, 215 (5th Cir. 2015) (per curiam) (citing *Eversley*, 843 F.2d at 174). "The court need only decide whether those undisputed facts are material and entitle the movant to judgment as a matter of law." *Id.* (citing *Eversley*, 843 F.2d at 174). Further, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphases in original).

### B. REVIEW OF THE COMMISSIONER'S DECISION

This Court has jurisdiction under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security for claims under Title II ("Disability Insurance Benefits") of the SSA. This Court has jurisdiction under 42 U.S.C. § 1383(c)(3) to review a final decision of the Commissioner for claims under Title XVI ("Supplemental Security

Income") of the SSA. Venue is appropriate because McLeod resides in Harris County, Texas. 42 U.S.C. § 405(g); 28 U.S.C. § 124(b)(2).

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the relevant legal standards were applied in reaching this decision. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). Substantial evidence is more than a scintilla, but less than a preponderance. *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990). A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (per curiam) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (citation cleaned up). As the factfinder, the ALJ "has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). When applying the substantial-evidence standard, the Court may not "reweigh the evidence in the record, . . . try the issues de novo, [or] substitute [its] judgment for that of the [Commissioner's]." *Johnson*, 864 F.2d at 343. Additionally, "[c]onflicts in the

evidence are . . . not [for] the court to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The ALJ's decision must stand or fall on the rationale set forth in the ALJ's opinion. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). If the Commissioner's findings are supported by substantial evidence, the findings are conclusive and so must be affirmed. 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

## III. DISCUSSION

McLeod fails to make any arguments in his Complaint, (Dkt. No. 1), or his Initial Briefing, (Dkt. No. 14), identifying the ALJ's source of error grounded in either the applicable law or substantial evidence thresholds. McLeod also failed to respond to Defendant's Motion for Summary Judgment. (Dkt. No. 15).

The Court finds that the facts as alleged in the Commissioner's Motion for Summary Judgment, (Dkt. No. 15), are undisputed because McLeod did not file a response. *See Eversley,* 843 F.2d at 174. Indeed, the Court is left with no choice because McLeod must "go beyond the pleadings" and designate specific facts showing that there is a genuine issue for trial by his own affidavits, depositions, answers to interrogatories, or admissions on file. *Nola Spice Designs*, 783 F.3d at 536. Outside of McLeod's Complaint, (Dkt. No. 1), and Initial Brief, (Dkt. No. 14), the record contains no supporting materials from McLeod beyond what the Commissioner submitted in its Motion for Summary Judgment and the Social Security Administration included in the Administrative Transcript, (Dkt. No. 8). And even so, the Court has no obligation to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir. 1994). "Judges are not

like pigs, hunting for truffles buried in the record." *United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) (per curiam) (quoting *Albrechtsen v. Bd. of Regents of Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002)).

Accordingly, the Court reviews the ALJ's five-step sequential decision to determine whether the ALJ applied the proper legal standards and whether substantial evidence supports the decision that McLeod was not disabled under the SSA from January 1, 2017, through April 28, 2021, the date of the ALJ's decision.

### A. WHETHER THE ALJ APPLIED THE CORRECT LEGAL STANDARD

Even though McLeod states in his Complaint that the Commissioner's decision was legally erroneous, he fails to identify any sources of legal error. (Dkt. No. 1); (*see also* Dkt. No. 14 at 1–3). Instead, McLeod merely recounts his general frustrations with the Social Security benefits application and review process and the logistics surrounding his hearing. (*See* Dkt. No. 1 at 3); (*see also* Dkt. No. 14 at 1–3). The Court finds that the ALJ applied the correct applicable legal standard.

#### 1. **<u>The Applicable Legal Standard</u>**

A claimant must prove that he or she suffers from a disability to be qualified for benefits. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The SSA defines "disability," in relevant part, as:

> [The] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. § 423(d)(1)(A).

In evaluating a claim for Disability Insurance Benefits or Supplemental Security Income, the Commissioner employs a five-step evaluation process that assesses whether: (1) the claimant is presently engaged in substantially gainful activity; (2) the claimant has a severe medical impairment with sufficient duration; (3) the medical impairment meets or equals one listed in Appendix 1 to Subpart P of Part 404 of the Social Security Regulations; (4) the medical impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantially gainful activity. 20 C.F.R. § 416.920(a)(4); *see also Muse*, 925 F.2d at 789. If, at any point in the five-step review, the ALJ finds that a claimant is not disabled, that finding "is conclusive and terminates the analysis." *Randall v. Astrue*, 570 F.3d 651, 653 (5th Cir. 2009) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)). "The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy." *Perez*, 415 F.3d at 461.

With respect to step two of the analysis, the Fifth Circuit has held that "the regulatory definition of 'severe impairment' is inconsistent with how the [SSA] defines disability." *See Cardona v. Kijakazi*, No. 3:21-CV-00142, 2022 WL 16953665, at *3 (W.D. Tex. Nov. 14, 2022) (collecting cases). Instead, the Fifth Circuit has consistently deemed an impairment to be non-severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984))

(alteration in original) (internal quotation marks omitted). Thus, in the Fifth Circuit, "an impairment is severe if it is anything *more* than [such] a 'slight abnormality[.]'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citation omitted) (emphasis added).

This step requires only that the claimant make a de minimis showing. *Id.* When the ALJ's decision is based on non-severity, the ALJ must provide some indication that they applied *Stone* or an equivalent authority in their written decisions. *Keel v. Saul*, 986 F.3d 551, 555–56 (5th Cir. 2021). And Social Security Ruling ("SSR") 85-28, which includes language similar but not wholly identical to *Stone*, "comports with" the *Stone* standard. *Keel*, 986 F.3d at 556; Social Security Ruling 85-28 (SSR 85-28): Titles II and XVI: Medical Impairments That Are Not Severe, 1983-1991 Soc. Sec. Rep. Serv. 390 (Jan. 1, 1985), 1985 WL 56856.

Of course, beyond ensuring that the ALJ cited the correct standard, courts must ensure that the ALJ also applied that standard correctly. *See Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986) ("We remand only where there is no indication the ALJ applied the correct standard.").

**2. <u>The ALJ's Application of the Five-Step Decision</u>**

On April 28, 2021, the ALJ issued its decision finding that McLeod was not disabled under the SSA from his alleged onset date of January 1, 2017, through April 28, 2021, the date of the ALJ Decision. (Dkt. No. 8-1 at 41–52). The Court briefly presents McLeod's ALJ five-step sequential decision in turn.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R §§ 404.1520(a)(i), (b). If an individual engages in

substantial gainful activity, he is not disabled regardless of the severity of his physical or mental impairment, age, education, and work experience. *Id.* at (b). If the individual does not engage in such activity, the analysis proceeds to the second step. Here, the ALJ found that McLeod had not engaged in substantial gainful activity since January 1, 2017. (Dkt. No. 8-1 at 44). The ALJ also confirmed that McLeod's last date insured was June 30, 2020. (*Id.*).

At step two, the ALJ must determine whether the claimant's medically determinable impairment (or combination of impairments) is "severe." 20 C.F.R §§ 404.1520(a)(4)(ii), (c). If the claimant does not have a severe medically determinable impairment, he is not disabled. *Id.* at (c). If the claimant has a severe impairment, the analysis proceeds to the third step. Here, the ALJ found that McLeod's hepatitis C and moderate major depressive disorder were severe impairments. (Dkt. No. 8-1 at 44). However, the ALJ found that McLeod's chronic obstructive pulmonary disease ("COPD"), cataracts, substance abuse disorder in remission, and obesity were medically determinable but non-severe impairments. (*Id.*). The ALJ explained that these non-severe impairments caused only slight abnormalities with a minimal effect on McLeod's ability to perform basic work activities for at least twelve months. (*Id.*). The ALJ noted that treatment records regularly showed no breathing problems despite McLeod's continued smoking. (*Id.*). Since the ALJ found that Plaintiff had a combination of impairments, some of which were severe, the ALJ's analysis proceeded to the third step.

At step three, the ALJ must determine whether the claimant's impairment (or combination thereof) meets or medically equals a listed impairment in 20 C.F.R. Part 404,

Subpart P, Appendix 1. 20 C.F.R §§ 404.1520(a)(4)(iii), (d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals a listing's criteria and the duration requirement, the claimant is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987). If it does not, the analysis proceeds to the next step. *Id.* Here, the ALJ found that McLeod did not have an impairment or combination of impairments that met or equaled a listed impairment. (Dkt. No. 8-1 at 45–46). Thus, the analysis proceeded to the fourth step.

But before considering step four, the ALJ must first determine the claimant's residual functional capacity ("RFC"). *Kneeland v. Berryhill*, 850 F.3d 749, 754 (5th Cir. 2017); 20 C.F.R §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work on a sustained basis despite limitations from his impairments. *See Kneeland*, 850 F.3d at 754; 20 C.F.R. § 404.1520(e). The ALJ must consider all the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; Social Security Ruling 96-8P (SSR 96-8P): Titles II and XVI: Assessing Residual Functional Capacity In Initial Claims, 61 Fed. Reg. 34474 (July 2, 1996), 1996 WL 374184. Here, the ALJ determined that through the date last insured or the date of the ALJ Decision, McLeod had the RFC to perform medium work, but he could not climb ladders and similar devices or work in hazardous environments. (Dkt. No. 8-1 at 47). The ALJ also limited McLeod to simple, routine tasks and no more than occasional interaction with others. (*Id.*).

Once the RFC is determined, the ALJ moves to step four and evaluates whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R.

§§ 404.1520(a)(4)(iv), (f), 416.920(f). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 416.920(f). If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and last step. Here, the ALJ found that McLeod could not perform his past relevant work as a blueprint trimmer. (Dkt. No. 8-1 at 50). The Dictionary of Occupational Titles ("DOT")—a Department of Labor publication—classifies that position under Job Code 920.687-038 with a Specific Vocational Preparation ("SVP") rating of two and within the light range of unskilled work. (*Id.*). Thus, the ALJ turned to the final step.

At the last step, the ALJ must determine whether the claimant can do any other work considering his RFC, age, education, and work experience. 20 C.F.R §§ 404.1520(a)(4)(v), (g), 416.920(g). If the claimant is able to do other work, he is not disabled. 20 C.F.R §§ 404.1520(a)(4)(v), (g). If the claimant is not able to do other work and meets the duration requirement, he is disabled. 20 C.F.R §§ 404.1520(a)(4)(v),(g) . Here, relying on vocational expert testimony, the ALJ identified two unskilled (SVP 2) occupations available to an individual with McLeod's age, education, work history, and RFC: hand packager (DOT 920.587-018), with 40,000 jobs available nationally, and laundry laborer (DOT 361.685-018), with 50,000 jobs available nationally. (Dkt. No. 8-1 at 51). The ALJ concluded that these jobs existed in significant numbers in the national economy and that McLeod could make a successful adjustment to other work. (*Id.*).

The ALJ therefore found that McLeod was not disabled from January 1, 2017, through June 30, 2020, and through the April 28, 2021, decision date. (*Id.* at 51–52).

### 3. <u>The ALJ Applied the Correct Standard in its Five-Step Decision</u>

The Court finds that the ALJ used the correct legal standards when it determined that McLeod was not disabled during the relevant period and thus denied his applications under Title II and Title XVI. Since McLeod filed a claim for Disability Insurance Benefits and Supplemental Security Income under the SSA, the ALJ was required to evaluate McLeod's claim under a five-step analysis. 20 C.F.R. § 416.920(a)(4); *see also Muse*, 925 F.2d at 789. The ALJ correctly did so, (Dkt. No. 8-1 at 42–52); *see supra* III(A)(2), and considered that although McLeod suffered from a combination of severe and non-severe impairments, McLeod's impairments did not meet or medically equal a listed impairment under step three of the analysis. 20 C.F.R §§ 404.1520(a)(4)(iii), (d), 404.1525. Moreover, the ALJ determined that Plaintiff's COPD was a non-severe, medically determinable impairment during the relevant time period. (*See* Dkt. No. 8-1 at 44). Importantly, the ALJ held that despite his impairments, there were other opportunities for gainful employment in the national economy that someone with McLeod's conditions could perform. (*Id.* at 47–51). The ALJ therefore concluded that Plaintiff was not disabled under the SSA. (*Id.* at 52); *Randall*, 570 F.3d at 653.

But the ALJ must do more than just conduct the five-step analysis when evaluating McLeod's claims under the SSA. The ALJ must also correctly apply the Fifth Circuit's *Stone* standard or equivalent authority when deciding that McLeod's medically determinable impairments—namely, COPD—were non-severe. On this, the ALJ found:

> The medical evidence also establishes that the claimant was diagnosed with several other impairments that the undersigned finds are non-severe, including: chronic

> obstructive pulmonary disease (COPD), cataracts, substance abuse disorder in remission, and obesity. These impairments are non-severe because the medical evidence establishes that they have caused only a slight abnormality that has no more than a minimal effect on Mr. McLeod's ability to perform basic work activities. In other words, the record does not show that these conditions have more than minimally limited the claimant's ability to engage in basic work activity for at least twelve months. More specifically, treatment notes regularly show no problems breathing despite continued smoking . . . . He is overweight, but the medical records do not suggest any functional limitations associated with this issue.

(Dkt. No. 8-1 at 44) (footnotes and internal citations omitted).

Here, the ALJ's findings conform with the *Stone* and SSR85-28 standards. The ALJ found that McLeod's COPD established "only a slight abnormality that has no more than a minimal effect" on Plaintiff's ability to work, citing SSR85-28 (1985). (Dkt. No. 8-1 at 44). *Stone* and SSR85-28 provide the correct standards for determining the severity of an applicant's medically determinable impairment, and the ALJ correctly applied them here. *Keel*, 986 F.3d at 555–56.

Thus, the Court finds that the ALJ correctly applied all relevant legal standards in its April 28, 2021, decision denying McLeod Disability Insurance Benefits and Supplemental Security Income.

### B. Whether Substantial Evidence Supports The ALJ Findings

Although McLeod does not indicate in his Complaint, (Dkt. No. 1), or in his Initial Brief, (Dkt. No. 14), that his appeal of the ALJ Decision is grounded in any source of error based on the evidence, the Court nevertheless reviews the ALJ's analysis of the evidence as a matter of course since this is a summary-judgment motion. After reviewing the ALJ

Decision, the Court finds that substantial evidence supports the ALJ's findings that (1) McLeod, under the step-five decision, could perform other work in the national economy given his residual functional capacity, age, education, and work experience, and that (2) his COPD was a non-severe impairment that caused no additional functional limitations lasting, or expected to last, twelve months.

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). This duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler*, 731 F.2d 1216, 1219–20 (5th Cir. 1984). Failure to do so renders the ALJ's decision not substantially supported; however, remand is appropriate only if the applicant was prejudiced by the ALJ's failure to fully develop the record. *Ripley*, 67 F.3d at 557. The Court therefore must examine whether the ALJ (1) satisfied his obligation to fully and fairly develop the facts, and (2) prejudiced the Plaintiff by failing to meet that obligation.

Here, the Court finds that the ALJ properly developed the factual record because he performed an extensive review of McLeod's treatment records, medical evidence, and McLeod's own statements to his treatment providers; he enlisted the services of consultative and vocational experts to assess McLeod; and he used tools such as intelligence tests and the DOT to make an informed decision. *See Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam). Because the ALJ properly developed the factual record, the Court does not need to turn to the second prejudice prong.

The Court also finds that the record provides substantial evidence supporting the ALJ's findings that (1) under step five of the analysis, McLeod could perform other work in the national economy given his residual functional capacity, age, education, and work experience, and that (2) McLeod's COPD was a non-severe impairment that caused no additional functional limitations lasting, or expected to last, twelve months. The totality of the record before the ALJ indicated more than a mere scintilla of evidence as such. *Moore*, 919 F.2d at 904. The evidence is relevant to the ALJ Decision and sufficient "for a reasonable mind to accept as adequate to support [the] conclusion" that McLeod was not disabled under the SSA as of April 28, 2021, and that his COPD was a non-severe impairment. *Spellman*, 1 F.3d at 360. And the record does not reflect a conspicuous absence of credible choices. *See Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Nevertheless, the Court analyzes whether substantial evidence exists in turn.

**1. <u>The ALJ's RFC findings and its step-five decision were supported by substantial evidence.</u>**

The ALJ may weigh the evidence and choose whichever physician's diagnosis is most supported by the record. *Bradley v. Bowen,* 809 F.2d 1054, 1057 (5th Cir. 1987) (per curiam). And an ALJ may not derive an RFC solely from its own interpretation of medical records; instead, the ALJ must consider the medical professional's testimony on how the medical condition affects the claimant's ability to work. *See Ripley*, at 557 n.27; *see also Frank v. Barnhart*, 326 F.3d 618, 621-22 (5th Cir. 2003) (per curiam). An ALJ may be obligated to order a consultative expert ("CE") to develop the record but only if "the

record establishes that such an examination is necessary to enable the [ALJ] to make the disability decision." *Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021) (quoting *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016)). In short, an ALJ does not need a medical opinion on what types of work the applicant can perform but *does* need a medical opinion on how the applicant's medical condition affects their ability to work. *Karen L. v. Bisignano*, No. 1:25-CV-00171, 2026 WL 962506, at *3–4 (N.D. Tex. Apr. 9, 2026).

Additionally, the Social Security Regulations specify how the ALJ must consider medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Here, Plaintiff filed his original claim on August 22, 2018, so those provisions apply. The ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the ALJ considers medical opinions and prior administrative medical findings according to the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes considering the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) other factors. *Id.* at §§ 404.1520c(c)(1–5), 416.920c(c)(1–5). The most important factors are supportability and consistency. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ must articulate the persuasiveness of all medical opinions pursuant to the factors and may do so in a single analysis; however, the ALJ need not articulate its consideration of each medical opinion

individually. *Id.* at §§ 404.1520c(b)(1), 416.920c(b)(1); *Guillory v. Saul*, No. 1:19-CV-00632, 2021 WL 1600283, at *5 (E.D. Tex. Apr. 23, 2021).

Here, in making the RFC finding and step-five determination, the ALJ properly enlisted Dr. McLendon to perform a consultative examination assessing how McLeod's impairments affected his ability to work. (*See* Dkt. No. 8-1 at 48–49); *see Webster*, 19 F.4th at 720. The ALJ found that (1) the medical evidence in the record does not support McLeod's extensive alleged limitations, (2) McLeod's source of pain is unclear based on the medical records, (3) McLeod has had no treatment for his alleged mental-health impairments, and (4) he generally has not received the type of medical treatment expected for a totally disabled individual. (Dkt. No. 8-1 at 48). The ALJ also asked Dr. Andrews "whether jobs exist in the national economy for an individual with [McLeod's] age, education, work experience, and [RFC]." (*Id.* at 51). The vocational expert testified that given his impairments, McLeod would be able to perform the requirements of occupations such as: Hand Packager (DOT # 920.587-018) medium, unskilled work, SVP 2, which had 40,000 nationwide available positions; and Laundry Laborer (DOT # 361.685-018) medium, unskilled work, SVP2, which had 50,000 available positions nationwide. (*See id.*). After reviewing the record and the ALJ Decision, the Court finds that the substantial evidence discussed below supports McLeod's RFC assessment and step-five decision.

The record shows that McLeod first sought treatment in July 2019 for his impairments with Justin Lantz, M.D., at Legacy Community Health Services. (*Id.* at 48). The ALJ found that there was no evidence of treatment before this time despite McLeod's

allegations that he became disabled in January 2017. (*Id.*); (Dkt. No. 15 at 9). The ALJ also found that McLeod's visits with Dr. Lantz and other providers at Legacy Community Health Services were for "relatively benign" cases and reported that McLeod was seen for a genital infection on October 3, 2019, and for flu-like symptoms on October 22, 2019. (Dkt. No. 8-1 at 48). McLeod completed a 12-week course of Mavyret treatment for his hepatitis C, after which McLeod later reported no symptoms related to his hepatitis C or other conditions. (*Id.*). And no hepatitis C was detected as of June 23, 2020. (*Id.*).

Separately, Dr. Lantz also advised McLeod to abstain from his alcohol and recreational drug use. (*Id.*). McLeod's last follow-up with Dr. Lantz was on July 7, 2020, where the record showed a "well-nourished and well-hydrated individual in no acute distress." (*Id*). The ALJ also referenced McLeod's other medical reports with Dr. Lantz, which showed that McLeod never complained of pain, fatigue, or shortness of breath. (*Id.*). Moreover, the ALJ observed that despite McLeod's cataracts, his vision still functioned well enough that he could watch television, draft architectural designs, occasionally drive, and maintain 20/100 vision in his right eye and 20/40 vision in his left eye with correction. (*Id.* at 47).

Following the July 2020 ALJ hearing, the ALJ enlisted the services of Dr. McLendon to perform a psychological consultative examination of McLeod. (*See id.* at 48). When Dr. McLendon asked McLeod to describe his disability during the examination, McLeod said he had been having problems related to COPD. (*See id.*). McLeod also shared that he had cirrhosis of the liver, cataracts, glaucoma, and psoriasis. (*See id.*). McLeod stated that these physical problems contributed to his depression,

which he said began around 2015, and that he was unable to work because of his depression. (*See id.*). Specifically, McLeod shared that "after COVID[,] I just went straight downhill." (*Id.*). Despite McLeod's alleged physical impairments, the ALJ found that there is minimal record of treatment for them. (*See id.*). Other than his hepatitis C, the ALJ was unable to find any other treatment or examinations that show abnormal physical findings. (*See id.*). In light of the sparse medical evidence for McLeod's alleged physical conditions, the ALJ determined that an RFC at the medium exertional level "more than accounts for [McLeod's] subjective complaints and any objective findings." (*Id.*).

Also, Dr. McLendon reported that McLeod's mood was stable but "consistent with some symptoms of depression as well as elevated levels of anxiety." (*See id.*). Dr. McLendon noted that McLeod exhibited some difficulty related to short-term memory and immediate recall but otherwise was not exhibiting memory problems. (*See id.*). And even though his ability to focus and concentrate appeared to be limited, McLeod made a good effort to remain involved during his evaluation. (*See id.*). Intellectual testing showed no significant problems. (*See id.*). Dr. McLendon noted that McLeod was able to understand, remember, and follow one or two-step directions but he had difficulty with more complex instructions. (*See id.* at 46). Dr. McLendon also noted that McLeod had a limited ability to sustain concentration and persist in work-related activity at a reasonable pace, and that he had a limited ability to maintain social interaction with supervisors, coworkers, and the public, which restricted his ability to handle normal pressures in a competitive work environment. (*See id.*). However, Dr. McLendon cautioned in his medical assessment that McLeod needed no more than "mild restrictions" in any work

setting. (*See id.* at 49). Overall, Dr. McLendon noted that McLeod had moderate major depressive disorder as well as alcohol- and cocaine-use disorders, but he was reportedly in remission for both substance-use disorders. (*See id.* at 485).

To account for McLeod's moderate major depressive disorder in the work environment, the ALJ assessed McLeod's RFC by reducing his social interactions and limiting him to simple, routine tasks, consistent with Dr. McLendon's consultative examination and recommendations. (*See id.* at 49). The ALJ also considered medical findings from the state agency—Disability Determination Services ("DDS")—which found insufficient evidence to address any limitations at the time of its evaluation of McLeod. (*Id.* at 49, 88–97, 102–107).

The ALJ found that McLeod displayed symptoms of anxiety and depression that would affect his ability to interact with others. (*Id.* at 49). Accordingly, the RFC adopted Dr. McLendon's opinions by limiting McLeod to routine and repetitive tasks with no more than occasional interaction with the public. (*Id.*). The ALJ found that any additional limitations were not warranted, as the treatment evidence from Legacy Community Health Services shows no mental-health treatment or even complaints of mental-health symptoms. (*Id.* at 49, 341–475, 702–709). The ALJ also noted that McLeod had indicated in his consultative examination that he had suffered from some of his conditions for the past 10 years. (*Id.* at 49, 704). Yet, the ALJ found there was no evidence of treatment for these conditions during this 10-year period, and McLeod even worked for some instances during this 10-year period in spite of his alleged conditions. (*Id.* at 49). Lastly, McLeod's own statements reinforce the Court's finding of substantial evidence supporting the ALJ

Decision when the ALJ observed that McLeod "denied having pain or fatigue or other significant symptoms" in many of his medical visits. (*Id.*).

Taken together, the Court holds that there is substantial evidence—that is, at least greater than a scintilla—to support the ALJ Decision regarding McLeod's RFC assessment and the step-five decision. The ALJ correctly noted in his decision that he "fully considered the medical opinions and prior administrative medical findings," and recognized the controlling law that he is constrained from "defer[ing] or giv[ing] any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s)." (*Id.*). The ALJ concluded that Dr. McLendon's consultative examination—which was the main medical opinion of record—was persuasive. (*Id.*); *see Guillory*, 2021 WL 1600283, at *5; §§ 404.1520c(c)(1-5), 416.920c(c)(1-5).

Viewed alongside the medical examinations, medical history, and McLeod's own statements, substantial evidence supports the ALJ's RFC assessment and step-five finding that, since the alleged onset date, McLeod has been able to perform a range of medium work consistent with the assessed RFC and the step-five decision. The ALJ formulated the RFC assessment in a manner favorable to McLeod, as the physical and mental status examination findings were largely unremarkable. And the step-five decision properly considered all McLeod's relevant physical and mental impairments.

**2. <u>Substantial evidence supports the ALJ's finding that McLeod's COPD was a non-severe impairment.</u>**

Substantial evidence also supports the ALJ's finding that McLeod's COPD was not a severe impairment as of the April 28, 2021, ALJ Decision. Plaintiff now argues, over four years after the ALJ Decision, that his COPD has worsened into emphysema forcing him to remain on oxygen for daily function. (Dkt. No. 14 at 2). While the Court empathizes with McLeod's alleged worsening condition, the determinative issue is whether substantial evidence supported the ALJ's April 28, 2021, decision. And based on the record evidence at that time, McLeod's currently alleged emphysema was not an issue during the period which ran through the April 28, 2021, ALJ Decision. (*See* Dkt. No. 15 at 8).

McLeod reported to Dr. McLendon during his March 2021 consultative examination that he had been diagnosed with COPD about 10 years previously. (*See* Dkt. No. 8-1 at 481). The ALJ also recognized that (1) McLeod was diagnosed with COPD, (2) his COPD is a medically determinable impairment, (*see id.* at 44), and (3) the Commissioner acknowledges as much. (*See* Dkt. No. 15 at 8). Yet, based on the evidence before him, the ALJ found that McLeod's COPD did not require additional functional limitations in the RFC assessment, and that the COPD was not a severe impairment as of either June 30, 2020—the date McLeod was last insured—or as of the April 28, 2021, ALJ decision. (*See* Dkt. No. 8-1 at 44–45); (Dkt. No. 15 at 7); *see also supra* III(A)(3).

The ALJ's non-severe impairment finding for McLeod's COPD is supported by substantial evidence. The ALJ held that McLeod's COPD was a non-severe impairment

because "the medical evidence establishes that [the COPD has] caused only a slight abnormality that has no more than a minimal effect on Mr. McLeod's ability to perform basic work activities." (Dkt. No. 8-1 at 44). The ALJ noted that McLeod's treatment records "regularly show no problems breathing despite [his] continued smoking," and that McLeod is overweight. (*Id.* at 44). Some of the evidence the ALJ cited includes McLeod's treatment records, in which he repeatedly denied shortness of breath, a hallmark symptom of COPD that could affect his ability to work. (*See id.* at 412 (citing the review of respiratory system during McLeod's August 26, 2019, medical exam)); (*id.* at 422 (citing the review of respiratory system during McLeod's December 20, 2019, medical exam)); (*id.* at 498 (citing treatment records of respiratory system during McLeod's March 28, 2020, medical examination)).

Other evidence in the record also supports the ALJ finding that McLeod's COPD was a non-severe impairment. The ALJ noted that, when McLeod applied for disability benefits, he alleged that his COPD limited his ability to work. *(Id.* at 42). McLeod also testified, however, that he stopped working because of memory and vision problems, which suggests an alternative reason for his alleged inability to work. (*Id.*). The record shows that McLeod continued working until 2015, which suggests that he could engage in at least some work activity despite alleging that he had COPD as early as 2011. (*See id.* at 242–45). The ALJ noted that there was minimal evidence of treatment for McLeod's physical conditions outside of his hepatitis C, and that the medical "examinations show no other abnormal findings." *(Id.* at 48). More specifically, the ALJ found that there was no evidence of treatment before July 2019, despite McLeod's allegations that he had been

disabled since January 2017. (*Id.*). And despite recommendations to quit, McLeod was an everyday smoker. (*Id.* at 396, 399, 638).

Still, treatment records repeatedly documented normal oxygen saturation levels, including 99% on room air in July 2019 and 93% on room air in October 2019. (*Id.* at 373, 396, 565, 638). McLeod's treatment records also consistently report COPD improvement with medication (e.g., Serevent Diskus and ProAir HFA), including improved wheezing, reduced symptoms while on short-acting beta-agonists ("SABA") and long-acting beta-agonists ("LABA") use, and chronic cough improvement. (*Id.* at 400–02, 411, 619, 642–644). Several physical examinations likewise routinely showed clear lungs bilaterally on auscultation, with no rales, wheezing, or rhonchi and no use of accessory muscles or intercostal retractions. (*Id.* at 377, 413, 432, 569, 621). And providers regularly assessed McLeod's COPD as improved with continued conservative treatment with inhalers. (*Id.* at 402, 415, 421, 423–424, 438, 505, 542, 544, 623).

In sum, the Court finds that there is substantial evidence that the ALJ cites to support its determination that McLeod's COPD was a non-severe impairment in that his COPD did not present more than a minimal effect on McLeod's ability to engage in basic work activity. *See Moore*, 919 F.2d at 904.

## IV. CONCLUSION

Considering the foregoing analysis, the Court concludes that the ALJ did not commit error. Substantial evidence and applicable authority support the ALJ's April 28, 2021, decision. The Court therefore **GRANTS** the Commissioner's Motion for Summary

Judgment. (Dkt. No. 15). The Commissioner's final decision is **AFFIRMED**. Plaintiff's Complaint, (Dkt. No. 1), is **DISMISSED with prejudice**.

It is SO ORDERED.

Signed on September 26, 2026.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**